# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: Jennifer A Moon, | Bankruptcy Case No. 11-36208-bhl |
| Debtor. | Chapter 7 |

| | |
|---|---|
| Jennifer A Moon, | |
| Plaintiff, | Adversary No. 18-02249-bhl |
| v. | |
| Iowa Student Loan Liquidity Corporation, | |
| Defendant. | |

## DECISION

Jennifer Moon filed a Chapter 7 bankruptcy petition on October 26, 2011. She received her discharge a few months later and her case was closed. Late last year, Moon reopened her bankruptcy case to commence this adversary proceeding against the Iowa Student Loan Liquidity Corporation (ISL). Moon alleges that ISL violated the discharge injunction by attempting to collect a discharged, prepetition debt. ISL has answered and denies violating the discharge injunction, insisting that the debt at issue was not discharged because it is a "student loan" debt excepted from discharge under 11 U.S.C. §523(a)(8).

The parties agree that the material facts are undisputed and have filed cross motions for summary judgment. They also agree that the dispositive issue is whether the ISL debt is one of the types of "student loan" debts that are excluded from discharge under section 523(a)(8). Counsel for both parties presented argument on September 6, 2019, and, after allowing for supplemental briefing, the court took the matter under advisement. Based on Seventh Circuit caselaw and the plain terms of the statute, the court concludes that the ISL debt is a student loan debt covered by section 523(a)(8)(A)(i) and was not discharged. Consequently, ISL did not violate the discharge injunction and is entitled to summary judgment. The court will enter a separate order resolving the parties' cross motions for summary judgment and dismissing Moon's complaint.

# UNDISPUTED FACTS[1]

Between 1996 and 2007, Moon was a student at three different post-secondary schools: Kirkwood Community College, the University of Iowa, and the Rochester Institute of Technology (RIT). Like many students, Moon obtained student loans to help fund her education. Moon's loans included both federal "direct" student loans and three "private" student loans.

Moon received her private loans from Wells Fargo, Citibank, and Sallie Mae. All three private loans were made when Moon was a student, and she concedes that she received them with the intent of using the funds to pay for tuition, living expenses, travel, and supplies.

In 2007, after she graduated from RIT, Moon applied to consolidate her private loans with ISL. ISL is a private, nonprofit institution that is governed by a board of directors appointed by the Governor of Iowa. It operates as a tax-exempt entity under 26 U.S.C. §501(c)(3).

Before agreeing to make the consolidation loan, ISL confirmed the educational nature of the underlying private loans. ISL reviewed Moon's credit report to ensure that the loans she sought to consolidate were listed as student loans. It also required Moon to certify in her loan application that the underlying loans were used solely "to pay for qualified higher educational expenses." Based on this and other information, ISL approved Moon's application and agreed to make the consolidation loan. In the resulting credit agreement that Moon signed, she certified that the loan proceeds would be used "solely to pay for qualified higher education expenses" and "that all information provided herein and on the Addendum (if an Addendum is required) is true and correct." The credit agreement also alerted Moon to the possibility that her consolidation loan might be "subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code."

Moon signed the credit agreement and made these affirmative certifications on November 20, 2007. Thereafter, ISL issued Moon a consolidation loan in the amount of $69,253.93 and distributed the loan proceeds directly to Wells Fargo, Citibank, and Sallie Mae to pay off Moon's underlying debts.

Four years later, Moon filed this bankruptcy case. She listed ISL as a creditor, describing the ISL debt as one for "Student Loans" in her schedules. Neither Moon nor ISL took any steps

---

[1] The undisputed facts are taken from the parties' briefs, affidavits, and stipulated facts.

to have the court determine the dischargeability of the debt before Moon received her discharge and her case was closed.

With her discharge in hand and her case closed, Moon stopped paying ISL. In response, ISL told her that the consolidation loan debt was not discharged because of section 523(a)(8). Moon seems to have accepted ISL's position, at least initially. She resumed her payments to ISL until requesting a deferment in March of 2014. After her case was closed, Moon paid ISL a total of $5,229.09 on the consolidated loan debt.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the parties' pleadings and affidavits show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). At summary judgment, the court's role is to determine whether there is a genuine dispute requiring trial, or "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997). A dispute over a material fact is "genuine" if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248. The moving party bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where any differences of fact are asserted, the court views the record in the light most favorable to the nonmoving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

# ANALYSIS

The parties agree that the central issue in this case – whether the ISL debt was discharged in Moon's bankruptcy – depends on an interpretation of section 523(a)(8) of the Bankruptcy Code. This section generally excepts from a debtor's discharge certain types of student loan debts unless the debtor can establish "undue hardship." More specifically, the statutory text provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \*
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. §523. Here, Moon does not claim that she will suffer "undue hardship" if the ISL loan debt is not discharged. Rather, she argues that the ISL loan debt is not one of the categories of "student loan" debts falling within the ambit of section 523(a)(8).

As presently enacted, section 523(a)(8) applies to three categories of "student loan" debts. The first category, set forth in subsection (A)(i), excludes from discharge debts for "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." The second category, described in subsection (A)(ii), excludes obligations "to repay funds received as an educational benefit, scholarship, or stipend." The final category, covered by subsection (B), excepts debts for "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual." A debt falling within any of these categories will not be discharged unless the

debtor shows that excluding the debt from the discharge "will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. §523(a)(8).

The parties offer an array of arguments for keeping the ISL consolidation loan both within and without of all three categories. The court need not delve deeply into the morass of arguments presented. The record establishes that Moon's debt to ISL falls squarely within the first statutory subsection, section 523(a)(8)(A)(i), and, as a result, the debt was not discharged.

### A. Section 523(a)(8)(A)(i) applies to the ISL consolidation loan debt.

Section 523(a)(8)(A)(i) excepts from a debtor's general discharge "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. §523(a)(8)(A)(i). For a debt to fall under this exception, a party must prove (1) an overpayment or a loan, (2) that is educational, and (3) either (a) made, insured, or guaranteed by a governmental unit, or (b) made under a program wholly or partially funded by a governmental unit or nonprofit. *See In re Sokolik*, 635 F.3d 261, 265-67 (7th Cir. 2011), *cert. denied*, 564 U.S. 1020 (2011); 4 Collier on Bankruptcy ¶523.14 (16th ed. 2019).

Moon's debt to ISL satisfies all three elements. The debt at issue unquestionably arises from a "loan." Moon and ISL entered into a contract, the credit agreement, pursuant to which ISL transferred a defined quantity of money ($69,253.93) to pay off and consolidate Moon's underlying student loans, and Moon agreed to repay those funds in the future. This is a loan. *See Sokolik*, 635 F.3d at 266 (defining loan for purposes of section 523(a)(8)(A)(i)).

In addition, the loan was "educational" in nature. Under Seventh Circuit caselaw, a loan is "educational" for section 523(a)(8) purposes if the "purpose" of the loan was to support the debtor's educational goals. *See id.* In *Sokolik*, the Court of Appeals explained that in determining whether a loan is educational, a court "need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school." *Id.* Here, Moon's consolidation loan was specifically premised on an educational purpose. In underwriting the loan, ISL took pains to ensure that the consolidation loan was educational in nature and made the loan under the specific premise that the loan would consolidate three underlying loans that Moon herself certified were educational in nature. *See id.* at 266-67. The ISL loan's purpose was to consolidate Moon's underlying student loans.

Third, the consolidation loan was made under a program funded by a nonprofit institution. The record establishes, and Moon does not dispute, that ISL is a nonprofit. *See In re Page*, 592 B.R. 334, 337 (B.A.P. 8th Cir. 2018) (noting loans are made under a program funded by a nonprofit when "the nonprofit entity played any meaningful part in procurement of the loans under the program"); *In re Pilcher*, 149 B.R. 595 (B.A.P. 9th Cir. 1993) (discussing nonprofit funding requirement); *In re Jean-Baptiste*, 584 B.R. 574, 584-85 (Bankr. E.D.N.Y. 2018) (collecting cases). Thus, the undisputed facts establish all three elements under section 523(a)(8)(A)(i).

### B. Moon's arguments to avoid section 523(a)(8)(A)(i) are unavailing.

Moon makes two arguments for excluding the ISL debt from section 523(a)(8)(A)(i). First, Moon insists the ISL debt falls outside this subsection because the original, underlying loans were made by private, for-profit institutions and thus, even if the ISL consolidation loan was made by a nonprofit, the debt cannot be covered by subsection (A)(i). Br. Supp. Pl.'s Mot. for Partial Summ. J. 8-9, ECF No. 15. Second, Moon argues that the ISL debt is not an "educational . . . loan" as required under section 523(a)(8)(A)(i) because the loan fails to satisfy the Internal Revenue Code (IRC) definition of "qualified education loan." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2-5, ECF No. 17. As explained below, both arguments fail based on the statutory language and Seventh Circuit caselaw.

#### 1. The relevant debt for section 523(a)(8)(A)(i) purposes is the ISL loan, not the underlying private loans that ISL paid off.

Moon's primary argument is that the court should look past the ISL consolidation loan and apply subsection (8)(A)(i) to the underlying private loans that ISL paid off. She contends that because the underlying loans were made by for-profit lenders, those debts would not satisfy subsection (8)(A)(i). While Moon is correct that loans made by private for-profit lenders fall outside subsection (8)(A)(i), her insistence that the court focus on those underlying loans, rather than the existing ISL consolidation loan, runs contrary to Seventh Circuit caselaw and the plain language of the statute.

Student loan consolidations are not new. Twenty-five years ago, in *Hiatt v. Indiana State Student Assistance Comm'n.*, 36 F.3d 21 (7th Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995), the Seventh Circuit addressed the issue of loan consolidation in a dispute over student loan dischargeability. In *Hiatt*, the Court of Appeals confirmed that in applying section 523(a)(8) and

analyzing the potential nondischargeability of a student loan debt, courts must look to the final consolidated loan, not the underlying loans replaced by the loan consolidation. *Id.* at 25. *Hiatt* involved a Chapter 7 debtor who took out several student loans from an institution designated by the United States Department of Education to guarantee educational loans. *Id.* at 22. The debtor later consolidated those loans with the same institution under a federal consolidation program before filing for bankruptcy four years later. *Id.* At that time, a prior version of section 523(a)(8)(A)(i) provided for the discharge of governmental or nonprofit student loans where payment of the loan first became due more than five years before the debtor's bankruptcy. *Id.* at 23. Because the debtor had received the consolidation loan *less* than five years before her bankruptcy petition, she argued the court should look to the original, underlying loans, which she received outside the five-year window. *Id.* at 22-24. The Seventh Circuit rejected her argument, explaining that when the debtor consolidated her student loans by undertaking a new loan, "the proceeds of which were used to repay in full her original educational loans," the consolidated loan became a "new, distinct debt." *Id.* at 23. This holding is consistent with a plain reading of the statutory text.

While *Hiatt* involved a prior version of the statute, its holding remains valid. When Moon accepted the consolidation loan from ISL, she replaced her prior debts with a "new, distinct debt" to ISL. Indeed, the underlying debts were extinguished by ISL's payments to the earlier lenders and ISL has no ability to enforce those underlying obligations. Moreover, although some of the statutory text has changed, the basic statutory structure and the wording analyzed by the Seventh Circuit in *Hiatt* have not. Accordingly, it is the consolidation loan that is the debt to be analyzed in this context.

Moon does little to distinguish *Hiatt* and cites no caselaw to support her argument for disregarding the existing debt in favor of analyzing debts that were satisfied and replaced by the ISL consolidation loan. Even after the court questioned whether *Hiatt* was dispositive at oral argument and gave her additional time to submit a supplemental brief, she offers no support for deviating from the Seventh Circuit's holding. It does not appear that any court has accepted Moon's premise. To the contrary, the courts that have addressed the issue agree that where multiple student loans are consolidated, it is the consolidated loan that must be analyzed for subsection (8)(A)(i) purposes. *See In re Drysdale*, 248 B.R. 386, 390-91 (B.A.P. 9th Cir. 2000), *aff'd*, 2 F. App'x 776 (9th Cir. 2001) (holding the loan consolidated by a nonprofit to be the loan

at issue when the debtor's original loans included a student loan issued by Citibank, a private for-profit lender); *In re Rudnicki*, 228 B.R. 179, 181 (B.A.P. 6th Cir. 1999) (finding the loan consolidated by a private entity, but guaranteed by a nonprofit, to be the loan at issue when the debtor's original loans included loans issued by SallieMae and Ameritrust, both private, for-profit lenders). Moon's argument for looking past the ISL consolidation loan is rejected.

### 2. The ISL loan is an educational loan within the meaning of section 523(a)(8)(A)(i).

Moon's second argument is that the ISL loan is not "an educational . . . loan" under section 523(a)(8)(A)(i) because it is not a "*qualified* education loan" under section 221(d)(1) of the IRC. Under the IRC definition, a "qualified education loan" must not exceed the student's "cost of attendance." 26 U.S.C. §221(d)(1), (2). Moon insists that one of her underlying loans, the Citibank loan, combined with her other borrowing, put her over the "cost of attendance" at RIT. Br. Supp. Pl.'s Mot. for Partial Summ. J. 9-10, ECF No. 15; *see also* 26 U.S.C. §221(d)(2); 20 U.S.C. §1087*ll*.

In more specific terms, Moon calculated the total cost of her attendance at RIT as $132,735, Compl. ¶ 17, ECF No. 1, but claims she received $146,368 in scholarships and federal student loans while attending RIT, Compl. ¶ 18, not including an additional $45,912 in private loans from Citibank and Sallie Mae. Moon Summ. J. Aff. ¶ 7, ECF No. 15-1. Based on this analysis, Moon asserts that the Citibank loan necessarily included funds in excess of the cost of attendance, making it a "mixed-use" loan and not a "qualified education loan" under the IRC definition. *See* 26 U.S.C. §221(d)(1); 26 C.F.R. §1.221-1(e)(4) Ex. 6 (2019) (providing an example of a mixed-use loan). Moon further argues that because the Citibank loan was not a qualified education loan, the ISL consolidation loan cannot be a qualified education loan.

Among numerous other disagreements, the parties dispute how to determine the "cost of attendance" at an educational institution. *See* 26 U.S.C. §221(d)(2); 20 U.S.C. §1087*ll*. The court need not resolve the "cost of attendance" issue, however, because Moon's argument is based on a false premise.

Contrary to Moon's theory, subsection (8)(A)(i) does not incorporate the IRC term "qualified education loan." While the final subsection of section 523(a)(8), subsection (B), cites to and incorporates the IRC term "qualified education loan," Congress elected not to impose that requirement on the categories of loans covered by subsection (A)(i) or (A)(ii). Thus, the IRC

definition only applies to the third of section 523(a)(8)'s three categories of student loans – those loans made by private, for-profit student lenders described in subsection (B). Where Congress has imposed a requirement in one subsection, but not in another, it is not appropriate for the court to re-write the statute to make the statute say something that it does not. *E.g.*, *Dodd v. United States*, 545 U.S. 353, 359 (2005) ("[W]e are not free to rewrite the statute that Congress has enacted.").

Subsection (8)(A)(i) applies to "an educational benefit overpayment or loan made" by governmental entities and nonprofits. 11 U.S.C. §523(a)(8)(A)(i). Unlike subsection (8)(B), subsection (8)(A)(i) simply requires that the debt at issue arise from a loan that is educational in nature; it need not comply with the IRC definition of "qualified education loan." 11 U.S.C. §523(a)(8)(A)(i), (B). As the Seventh Circuit explained in *In re Sokolik*, "it is the purpose of a loan which determines whether it is 'educational.'" 635 F.3d at 266.

Here, both the underlying private loans and the ISL consolidation loan were "educational" in nature. Moon concedes that the underlying private loans were predicated on Moon being a student. She received them while she was a student and with the intent of using the funds to pay for tuition, living expenses, travel, and supplies. When Moon sought to consolidate those loans with ISL, she specifically certified that both the underlying loans had been, and the consolidation loan would be, used solely to pay for "qualified higher educational expenses." The undisputed facts establish that ISL made the consolidation based on that premise. In these circumstances, the ISL loan is "educational" in nature for purposes of subsection (8)(A)(i). This is true, even if the loan would not be a "qualified education loan" for purposes of subsection (8)(B) and IRC section 221(d)(1). Even if Moon borrowed more than the cost of her education, her excess borrowing does not place the consolidation loan outside subsection (8)(A)(i).

At least one other court faced with a consolidation loan under section 523(a)(8)(A)(i) has similarly focused on whether the underlying and consolidation loans were educational in nature without requiring an analysis of whether the loans satisfied the IRC definition of "qualified education loan." *See In re Cleveland*, 559 B.R. 265 (Bankr. N.D. Ga. 2016) ("A failure of a loan to qualify under one of the provisions does not eliminate the possibility of it qualifying as non-dischargeable under the other provisions."). And, again, despite being given the chance to submit a supplemental brief, Moon cites no authority for incorporating the IRC definition into

section 523(a)(8)(A)(i). Based on the plain terms of the applicable subsection and the Seventh Circuit's reasoning in *Sokolik*, the ISL debt is a student loan debt excluded from the debtor's discharge under section 523(a)(8)(A)(i).

## CONCLUSION

The undisputed facts confirm that the ISL debt is a student loan debt covered by section 523(a)(8) and was not discharged. Consequently, ISL did not violate the discharge injunction. The court will enter a separate order granting ISL's summary judgment motion, denying Moon's motion for partial summary judgment, and dismissing Moon's complaint.

Dated: December 18, 2019
BY THE COURT

_____
Brett H. Ludwig
United States Bankruptcy Judge